Filed 2/26/25  P. v. Simpson CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B337029 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA127755) |
| v. | |
| DONALD ALAN SIMPSON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Ricardo R. Ocampo, Judge.  Affirmed.

Richard D. Miggins, under appointment by the Court of Appeal; Donald Simpson, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

On November 20, 2012 Donald Alan Simpson planned and participated in the armed robbery of the Las Palomas Meat

Market. During the robbery, Luis Valadez, the store owner, was shot and killed by codefendant Davion Woodspage. A jury convicted Simpson of multiple counts, including first degree murder. In 2024 the trial court denied Simpson's petition for resentencing under Penal Code[1] section 1172.6 after conducting an evidentiary hearing. In denying the petition, the court found Simpson was a major participant who acted with reckless indifference to human life.

After reviewing the record, Simpson's appointed appellate counsel did not identify any arguable issues. Nor, after independently reviewing the record and the contentions presented by Simpson in his supplemental brief, have we. Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 18, 2012 Simpson, 14-year-old Cindy J., Woodspage, and Jermaine Stanley entered a neighborhood market in Torrance to commit a robbery. Simpson pointed a firearm at the cashier and took $7,000 from the cash register after accidentally discharging his firearm. A second store employee, who had been stocking shelves when Simpson entered, hid when he saw Simpson with the gun.

Two days later, at approximately 6:30 p.m., Simpson, Woodspage, and Cindy went to the Las Palomas Meat Market with a plan to rob the store. Simpson drove the car to the market and told Cindy the plan was for her to buy something, then once the register was open, "they would take action," meaning

---

[1] Further statutory references are to the Penal Code.

2

Simpson and Woodspage would take money from the register by pointing a gun at the owner of the store. A fourth person served as a lookout. Simpson had a handgun, and Woodspage had a rifle. When they arrived at the market, Simpson and Woodspage had their guns in the waistband of their pants. Simpson was wearing a hoodie over his head and a blue bandana covering the bottom half of his face; Woodspage wore a skeleton mask that covered his face. Cindy walked in the front door; Simpson and Woodspage entered through the back door.

When he entered the store, Simpson encountered Jose Garcia, a store employee, in the back section of the store. Garcia turned around and saw Simpson wearing a bandanna over his nose and mouth. Garcia believed Simpson was holding a gun, and the two struggled. Garcia batted away Simpson's arm, causing Simpson's firearm to discharge. The shot missed Garcia, and Garcia crouched down. Simpson then hit Garcia on his head with a hard object (the gun); Garcia felt a hard blow, and blood flowed from his head. At that point Simpson turned around and went toward the front of the store where Luis Valadez was working at the cash register. Garcia ran from the store bleeding from the head and hid under a vehicle.

When Woodspage entered the store, he walked toward the front of the store, where Valadez was at the cash register. Woodspage walked toward Valadez while pointing his rifle at him. Valadez struggled with Woodspage for control of the rifle. During the scuffle, Woodspage fired four shots, one of which struck Valadez in the chest. Valadez later died from a gunshot wound.

After Woodspage shot Valadez, he and Cindy ran out the back door of the store. Cindy waited there for Simpson. Simpson

grabbed some money from the front of the store near the register where Valadez lay dying and escaped out of the back of the store, in the process dropping 11 crumpled one dollar bills. Simpson and Cindy then ran toward their car, where Woodspage and the lookout were waiting. Simpson drove away with the group.

The information charged Simpson with 12 counts, including first degree murder (§ 187), with the special allegation the murder was committed while Simpson was engaged in the commission of a robbery (§ 190.2, subd. (a)(17)(A)). The information further alleged Simpson personally used a firearm in connection with the murder (§ 12022.53, subd. (b)), and the murder was committed to benefit a criminal street gang (§ 186.22, subd. (b)(1)(C)). The jury convicted Simpson on all counts and found each of the special allegations true.

In *People v. Simpson* (July 12, 2017, B271460) (nonpub. opn.) (*Simpson I*) we affirmed Simpson's convictions but remanded for resentencing in light of multiple sentencing errors. On remand Simpson was sentenced to an aggregate state prison sentence of life without the possibility of parole, plus 44 years four months. We affirmed but directed the court to delete the reference in the abstract to an additional life term with a 25-year minimum eligibility. (*People v. Simpson* (Apr. 3, 2019, B291875) [nonpub. opn.] (*Simpson II*).)

On February 7, 2019 Simpson, in pro per., filed a petition for resentencing under former section 1170.95 (now section 1172.6) stating he met the requirements for relief under Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), effective January 1, 2019, including that (1) the information allowed the prosecution to proceed under a theory of felony murder; (2) Simpson was convicted of murder based on a theory

4

of felony murder; and (3) Simpson could not be convicted of first or second degree murder under changes to sections 188 and 189 effective January 1, 2019. Simpson requested the trial court appoint him counsel and vacate his murder conviction.

On February 11, 2019 the trial court summarily denied Simpson's petition without Simpson or any counsel present, relying on the jury's true finding on the special circumstance finding under section 190.2, subdivision (a)(17)(A), that the murder was committed while Simpson was engaged in the commission of a robbery. The court concluded that "by finding the allegation to be true, the jury had to have found that petitioner, even if not the actual killer, acted with the intent to kill or was a major participant and acted with reckless indifference to human life. [¶] Therefore, due to the jury's findings as stated and pursuant to . . . section 189 (e)(3), the petitioner does not qualify for resentencing [under] section 1170.95."

We affirmed the trial court's ruling in *People v. Simpson* (Mar. 10, 2020, B296083) (nonpub. opn.) (*Simpson III*), but the Supreme Court granted Simpson's petition for review and transferred the case to us with directions to vacate our decision and reconsider Simpson's appeal in light of *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*) and *People v. Lewis* (2021) 11 Cal.5th 952. In our subsequent opinion, we agreed with Simpson that under *Lewis*, which was decided after the superior court's denial and our original decision, Simpson had filed a sufficient petition under section 1172.6 and the trial court erred in denying Simpon's petition without first appointing counsel. (*People v, Simpson* (Feb. 7, 2023, B296083) [nonpub. opn.] (*Simpson IV*).) We also agreed with Simpson that because his

5

special circumstance finding under section 190.2, subdivision (a)(17)(A), predated *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), he was not ineligible for relief as a matter of law.  (*Simpson IV*, *supra*, B296083.)

On remand, the trial court appointed counsel for Simpson, and the People conceded Simpson was entitled to an evidentiary hearing.  Following additional briefing, the court held an evidentiary hearing on February 23, 2024.  Simpson waived his physical appearance at the hearing (although he appeared by telephone), and the parties proceeded without calling witnesses. The court stated it had considered the trial transcripts, jury instructions, and verdict forms.

After hearing argument from counsel, the trial court denied the petition for resentencing.  The court found that under *Banks*, *Clark*, and *In re Scoggins* (2009) 9 Cal.App.5th 67 (*Scoggins*), Simpson was a major participant and acted with reckless indifference to human life.  The court explained that Simpson was "on notice" of "the dangers of carrying and arming people with weapons and what could happen . . . .  He knows the danger of an accidental discharge, he continues to arm individuals. . . .  He was armed and he armed the individuals, gave specific roles to them.  He was physically present.  Sure there may be an argument as to whether he was right next to the actual shooter, Mr. Woodspage, but he was still present at the scene.  It wasn't that he was outside, he was hoping that this would all end.  He took advantage of the situation.  Once [Valadez] was shot, did he even make any attempts to call 911, render aid?  There's no evidence of such. . . .  All he was concerned about was getting the money and escaping. . . .  There

6

[were] no efforts to minimize the risk of violence in this case. There [were] no efforts to mitigate his previous actions or the actions of his cohorts."

Simpson timely appealed.

## DISCUSSION

We appointed counsel to represent Simpson on appeal from the denial of his petition for resentencing. After reviewing the record, appointed counsel did not identify any arguable issues and so informed this court. Appointed counsel advised Simpson that he was filing a brief stating he "did not find any arguable issues to raise" and Simpson had a right to file a supplemental brief. Appointed counsel also sent Simpson a copy of the brief and the transcripts of the record on appeal.

On December 9, 2024 we received a nine-page supplemental brief from Simpson. In his supplemental brief, Simpson "conceded he was a major participant in the robbery," but he argued "there was insufficient evidence to establish that he acted with reckless indifference beyond a reasonable doubt." Specifically, Simpson argued there was no evidence he supplied Woodspage with the weapon, he knew Valadez had been shot, or the accidental discharge of his firearm in the prior robbery put him on notice of the danger an armed robbery posed to human life. Further, Simpson "did not instigate, taunt, or otherwise contribute to Woodspage engaging in a struggle with Valadez," and there was nothing Simpson could have done to prevent the shooting because he was in another room, and his only "intent was to commit robberies." Simpson asserted that pursuant to the factors set forth in *Banks* and *Clark*, we should reverse the trial

7

court's order denying his resentencing petition or grant a new evidentiary hearing.

Senate Bill 1437 eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly limited the scope of the felony-murder rule. (*People v. Reyes* (2023) 14 Cal.5th 981, 984; *Strong, supra,* 13 Cal.5th at pp. 707-708; *People v. Lewis, supra,* 11 Cal.5th at p. 957; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843, 847-848.) Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule in section 189, subdivision (e). Section 189 requires the People to prove that the defendant was the actual killer (§ 189, subd. (e)(1)); that the defendant, though not the actual killer, with the intent to kill aided or assisted in the commission of the murder (§ 189, subd. (e)(2)); or that the defendant was a major participant in a felony listed in section 189, subdivision (a), and "acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2," the felony-murder special-circumstance provision (§ 189, subd. (e)(3)). (*People v. Curiel* (2023) 15 Cal.5th 433, 448-449; see *People v. Wilson* (2023) 14 Cal.5th 839, 868-869; *Strong*, at p. 708; *Gentile*, at pp. 842-843.)

In *Clark* and *Scoggins*, the Supreme Court specified the relevant factors in determining whether a defendant acted with reckless indifference to human life under the totality of the circumstances. The court observed these factors "'significantly overlap'" with the major participant factors because "'the greater the defendant's participation in the felony murder, the more likely that he [or she] acted with reckless indifference to human

8

life.'" (*Clark, supra*, 63 Cal.4th at p. 615.) The factors relevant to whether an individual acted with reckless difference to human life include: "Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony?" (*Scoggins, supra*, 9 Cal.5th at p. 677; accord, *Clark*, at pp. 618-622; see *Strong, supra*, 13 Cal.5th at p. 706 [describing *Clark*'s "nonexhaustive list of considerations relevant to this determination [of reckless indifference], including use of or awareness of the presence of a weapon or weapons, physical presence at the scene and opportunity to restrain confederates or aid victims, the duration of the crime, knowledge of any threat the confederates might represent, and efforts taken to minimize risks"].)

As the *Scoggins* court explained, "Reckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.'" (*Scoggins, supra*, 9 Cal.5th at p. 676; accord, *Banks, supra*, 61 Cal.4th at p. 808 ["[a]wareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient"; reckless indifference to human life requires "knowingly creating a '*grave risk of death*'" (italics added)].) "Whether [a defendant] was a major participant in the underlying felonies who acted with reckless indifference to human life is predominantly a factual

9

question reviewable for substantial evidence." (*People v. Oliver* (2023) 90 Cal.App.5th 466, 480; see *People v. Underwood* (2024) 99 Cal.App.5th 303, 317 [substantial evidence did not support superior court's finding that defendant acted with reckless indifference to human life].)

Substantial evidence supports the trial court's finding that Simpson acted with reckless indifference to human life. "Reckless indifference 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.'" (*Scoggins, supra*, 9 Cal.5th at pp. 676-677, quoting *Clark, supra*, 63 Cal.4th at pp. 616-617.) The evidence at trial showed Simpson's willingness to kill or assist Woodspage in killing Valadez. Simpson planned the robbery, and he knew that he and Woodspage would be armed before entering the meat market. Simpson was prepared to use violence, as shown by his holding a firearm as he encountered Garcia, resulting in a bloody struggle. Although Simpson highlights that he was in a different section of the store when Valadez was shot, Simpson was in close proximity to the shooting. And after Valadez was shot, Simpson went to the front of the store to complete the robbery, taking money from the cash register in the area where Valadez lay dying on the floor. Simpson then fled the store without rendering aid to Valadez or calling for help. (See *In re Scoggins, supra*, 9 Cal.5th at p. 679 ["A defendant's actions after the shooting may also bear on the defendant's mental state."].)

Because neither Simpson nor his appellate counsel has identified a cognizable legal issue, and our independent review has not identified one either, we affirm the order denying Simpson's petition for resentencing. (See *People v. Delgadillo*

(2022) 14 Cal.5th 216, 231-232; *People v. Kelly* (2006) 40 Cal.4th 106, 118-119; *People v. Wende* (1979) 25 Cal.3d 436, 441-442.)

## DISPOSITION

The order denying Simpson's petition for resentencing is affirmed.

FEUER, J.

We concur:

MARTINEZ, P. J.

STONE, J.

11